UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA GREENBERG,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CDK GLOBAL, INC., BRIAN M. KRZANICH, LESLIE A. BRUN, WILLIE A. DEESE, AMY J. HILLMAN, STEPHEN A. MILES, ROBERT E. RADWAY, STEPHEN F. SCHUCKENBROCK, FRANK S. SOWINSKI, EILEEN J. VOYNICK, BROOKFIELD BUSINESS CORP., and BROOKFIELD BUSINESS PARTNERS LP,<br><br>　　　　Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants ("Defendants"), alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations, as follows:

**Nature of Action**

1. This action stems from a proposed transaction announced on April 7, 2022 (the "Proposed Transaction"), pursuant to which CDK Global, Inc. ("CDK" or the "Company") will be acquired by Brookfield Business Corp. and Brookfield Business Partners LP (together, "Brookfield") and become a privately held company.

2. On April 7, 2022, CDK's Board of Directors, ("Board") caused the Company to enter into an Agreement and Plan of Merger, pursuant to which Brookfield will acquire CDK by way of a tender offer (the "Tender Offer"), in which it will offer CDK's shareholders $54.87 in

1

cash per share. Upon consummation of the Tender Offer, assuming a majority of shares are tendered, Brookfield will complete the Proposed Transaction by way of a second step merger at the same price. The Tender Offer, which commenced on April 22, 2022, is set to expire on May 19, 2022.

3. On April 22, 2022, Defendants filed a Schedule 14D-9, Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, Plaintiff alleges herein that Defendants violation Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## Jurisdiction and Venue

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14 (e), 14(d), and 20(a) of the 1934 Act and rule 14a-9.

6. This Court has jurisdiction over the Defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. §1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

## Parties

2

8. Plaintiff is, and at all times relevant hereto, has been an owner of CDK common stock.

9. Defendant CDK is a Delaware corporation with a principal place of business at 1950 Hassell Road, Hoffman Estates, IL 60169, and its stock trades on the NASDAQ.

10. Defendant Brian M. Krzanich is the President and Chief Executive Officer of the Company and a member of its Board.

11. Defendant Leslie A. Brun has been a member of the Board since 2014.

12. Defendant Willie A. Deese has been a member of the Board since 2014 and is the chair of the Compensation Committee.

13. Defendant Amy J. Hillman has been a member of the Board since 2014 and is the Chair of the Nominating and Governance Committee.

14. Defendant Stephen A. Miles has been a member of the Board since 2014 is a member of the Nominating and Governance Committee.

15. Defendant Robert E. Radway has been a member of the Board since 2014 and is a member of the Audit and Compensation Committees.

16. Defendant Stephen F. Schuckenbrock has been a member of the Board since 2016 and is a member of the Audit Committee.

17. Defendant Frank S. Sowinski has been a member of the Board since 2014 and is a member of the Nominating and Governance Committee.

18. Defendant Eileen J. Voynick has been a member of the Board since 2016 and is a member of the Compensation Committee.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to as the "Individual Defendants".

20.     Defendant Brookfield Business Corporation is a Canadian corporation with a principal place of business at 250 Vesey Street, 15th Floor, New York, NY 10281, and is traded on the New York Stock Exchange.

21.     Defendant Brookfield Business Partners L.P. is a Bermuda corporation with a principal place of business at 73 Front Street Hamilton, HM 12, Bermuda.

## Substantive Allegations

22.     CDK is the largest provider of automotive dealership solutions for auto dealers, including retailing, CRM, financings, parts and service, IT infrastructure and dealership operations.

23.     On April 7, 2022, CDK's Board caused the Company to enter into the Merger Agreement.

24.     Pursuant to the terms of the Merger Agreement, Brookfield is acquiring CDK by way of a tender offer (the "Tender Offer"), in which it is offering CDK's shareholders $54.87 in cash per share.  Upon consummation of the Tender Offer, assuming a majority of shares are tendered, Brookfield will complete the Proposed Transaction by way of a second step merger at the same price. As of April 18, 2022, according to the Tender Offer, there were 116,699,802 Shares issued by CDK.

25.     According to the Press Release announcing the Proposed Transaction:

> Brookfield Business Partners (NYSE: BBUC, BBU; TSX: BBUC, BBU.UN), together with institutional partners (collectively "Brookfield") today announced an agreement to acquire CDK Global Inc. (NASDAQ: CDK) ("CDK Global" or the "Company") for $54.87 per share in a transaction valued at approximately $8.3 billion.
>
> With annual revenue of $1.7 billion, CDK Global is a leading provider of technology services and software solutions that help automotive dealers and manufacturers run their businesses more efficiently. The Company's best-in-class dealer management software plays a critical role in connecting every aspect of a

dealership's operations and providing solutions to help these customers grow their businesses.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

27. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

## Financial Projections

27. The Solicitation Statement fails to disclose material information regarding CDK's financial projections. Although it contains projections for both a management case ("Management Case") and a risk adjusted case (the "Risk Adjusted Case"), which purportedly adjusts the Management Case for certain risks, neither set of projections contains (i) the line items underlying the financial projections; including the projected free cash flows; and (2) a reconciliation of GAAP and non-GAAP metrics.

28. The Solicitation Statement further fails to disclose how the Risk Adjusted Case was determined. While it indicates generally the factors that were considered risks, it fails to disclose how the Risk Adjusted Case, which is then used by Morgan Stanley & Co. LLC ("Morgan Stanley") to justify the fairness of the Transaction when the tender offer consideration ("Tender Offer Consideration") is below the Management Case range in various of its analyses, was determined, and how the Management Case was actually impacted by each of the risk factors. For example, it fails to disclose the difference in the growth rate between the Management Case and the Risk Adjusted Case and why the risk factors considered by the Board would have that impacted on growth.

5

29.     It also fails to disclose what nascent technologies of the Company were failing to perform as expected, and the cause of those failures.

## Financial Analyses

30.     Morgan Stanley acted as the Company's financial advisor and rendered a fairness opinion ("Fairness Opinion") regarding the fairness of the Tender Offer Consideration to the Company's shareholders. Significantly, Morgan Stanley will receive a $56 million fee contingent upon the closing of the Proposed Transaction. Unsurprisingly, then the Solicitation Statement contains analyses purportedly supporting the Fairness Opinion but omits material information regarding those analyses.

31.     The first analysis is a "Leveraged Buy Out Analysis" for both the Management and Risk Adjusted Case. The Leveraged Buy Out Analysis, however, is misleading based an Adjusted EBITDA for CDK of $674 million, which is far below the adjusted EBITDA for the Company in either the Management or Risk Adjusted Case, and therefore, derives a misleadingly low range of values for CDK. No explanation is given for why Morgan Stanley fails to use the actual or projected adjusted EBITDA in either CDK's Management or Risk Adjusted Case and instead uses a far lower adjusted EBITDA or what the outcome of the Leveraged Buy Out Analysis would be if the appropriate Adjusted EBITDA had been used.

32.     The next analysis is a Discounted Cash Flow Analysis for both the Management and Risk Adjusted Cases. This in turn is based upon the adjusted free cash flow projections contained in those projections, for which the line items are misleadingly omitted.

33.     In performing the Discounted Cash Flow Analysis, Morgan Stanley derived a total implied aggregate value range for the Company from which it subtracted the Company's net debt as of March 31, 2022 but fails to disclose the amount of debt it used to reduce the

Company's aggregate value and thus to justify its low-price range. It then divided the range of values by the number of outstanding shares but fails to disclose that number of which shares were included in that calculation—again to justify a low-price range particularly for the risk adjusted case.

34.     The Solicitation Statement also contains a number of analyses performed by Morgan Stanley which it states are for reference only and were not used as a component of fairness although it fails to explain why these fairly typical fairness analyses were not used.

35.     Certain of these analyses also omit certain material information. For example, Morgan Stanley performs a Broker Price Targets analysis, in which it sets forth the range of broker price targets for CDK and then discounts those price targets back to arrive at an implied price per share as of April 5, 2022.

36.     However, Morgan Stanley fails to state how many broker targets were reviewed or to set out the target for each broker. Moreover, in coming to a discounted price range, Morgan Stanley fails to indicate how these targets were weighted; that is, whether most of the targets fell within the higher or lower part of the range. Without such weighting or disclosing each broker and its target price, or without giving a mean or median target price, this analysis is misleading.

37.     Morgan Stanley further performed a Public Trading Benchmarks analysis, in which derives an implied value of the Company through the use of certain financial benchmarks characteristic of presumably comparable companies. In this case, Morgan Stanley derived the calendar year 2022 estimated aggregate value to EBITDA ratio for 11 public companies, and then selected a representative range of AV/EBITDA multiples and applied it to Company's estimated Adjusted EBITDA for the Management Case.

38. This analysis omits to state, however, the selected representative range of AV/EBITDA multiples used to derive the implied value per share of the Company and how Morgan Stanley weighted the multiples it used. Moreover, the Company's multiples are significantly lower than those of the comparable companies, meaning that it is trading at a significantly cheaper price than these comparable companies. Therefore, it is misleading to indicate that these are comparable companies.

39. Morgan Stanley further performed a Precedent Transaction analysis in which it derived relevant metrics from a review of the metrics applicable to similar transactions, in this case an aggregate value to last twelve months EBITDA ratio. Again, Morgan Stanley derived a range of financial multiples but fails to disclose how it weighted the various transactions. Nonetheless, the Tender Offer Consideration did not fall within the range.

### Determination of Executive Officers PSU's

40. In addition, the Solicitation Statement contains a discussion of the CDK performance-based stock units "(PSUs") that each CDK Executive Officer will be considered to have held (and which will be converted into the Tender Offer Consideration), and thus the degree to which those Executive Officers will receive consideration greater than and different from the consideration to be received by shareholders. The discussion of how the number of PSUs were determined, however, is misleading and omits material information.

41. The number of PSUs a of the Company's Executive Officer, according to the Tender Offer, are arrived at as follows:

> The table below sets forth, for each of our executive officers holding PSUs as of April 18, 2022, (i) the aggregate number of PSUs held (inclusive of accrued dividend equivalents, and assuming that **all applicable performance metrics** for performance periods that have not been completed as of immediately before the Effective Time had been achieved (on a cumulative basis and not on an individual performance year basis) at the greater of target level and actual performance

measured through the Effective Time, with the financial performance metrics in respect of any fiscal year commencing after the 2022 fiscal year deemed achieved at the **target level**) and (ii) the value of cash amounts payable in respect of such PSUs on a pre-tax basis as of the consummation of the Offer, calculated by multiplying the Offer Price by the number of Shares subject to such PSUs. The final assumed payout percentages are as follows, as determined consistent with the Merger Agreement and described above: 2020 PSUs - 100%, 2021 PSUs - 113% and 2022 PSUs - 105%. (Emphasis supplied).

42. However, the Solicitation Statement fails to disclose the "performance metrics" for periods that have not been completed, and how those performance metrics are calculated on a cumulative rather than an individual basis.

43. Further, there is no indication what the difference is between the "target levels" and the actual performance of the Company measured through the Effective Time, and how much more the Executive Officers will receive because of the Proposed Transaction. This issue is particularly important for shareholders in determining the degree to which the Executive Officers were conflicted and their incentive for approving and supporting the Proposed Transaction.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

46. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under

9

which they were made, omitted to state material facts necessary to make the statements therein not misleading.

47. The Solicitation Statement was prepared, reviewed, and/or disseminated by Defendants.

48. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

49. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, Defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

50. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

51. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

52. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

53. Because of the false and misleading statements in the Solicitation Statement, plaintiff is threatened with irreparable harm.

54. Plaintiff has no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

10

56. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

58. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

59. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

60. The omissions in the Solicitation Statement are material to Plaintiff, and he will be deprived of his entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

61. Plaintiff has no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants)

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of CDK within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of CDK and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

64. Each of the Individual Defendants, was provided with or had unlimited access to copies of the Solicitation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

66. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.

68. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

69. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: April 28, 2022

By: /s/ Lynda J. Grant

Lynda J. Grant
**THE GRANT LAW FIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212-292-4442
Email: Lgrant@grantfirm.com

*Attorney for Plaintiff*